UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

**DEMETRIUS M. BOYD**,

      **Plaintiff,**

  v.                                        Case No. 15-CV-1550

**LT. LEFFELER, et al.**,

      **Defendants.**
_____

## ORDER

Plaintiff, a state prisoner who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that defendants violated his civil rights. I screened plaintiff's complaint on February 9, 2016, and alerted him to deficiencies he needed to correct. Plaintiff filed an amended complaint on March 14, 2016; however, plaintiff failed to correct the previously identified deficiencies. I gave plaintiff one final opportunity to follow my instructions. On April 13, 2016[1], plaintiff filed a second amended complaint.

Federal law requires that I screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

---

[1] I had given plaintiff a deadline of April 8, 2016, to file a second amended complaint. On that day, plaintiff filed a motion for extension of time, asking for an additional week. He then filed his second amended complaint on April 13, 2016. I will grant plaintiff's motion for an extension of time.

To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for a plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, courts must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and

2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). I am obliged to give plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### Plaintiff's Allegations

Plaintiff is suing the following Wisconsin Secure Program Facility staff members: Lt. Leffler, Officer Gallinger, Officer Hunt, Officer Jones, Officer Brown, Sgt. Snodgrass, Sgt. Allen, Nurse Wood, Health Services Unit Manager Waterman, Lt. Cichanowicz, Mark Kartman, Deputy Warden David Williams, Officer Wigel, Cpt. Brown, and Ms. Dickman (a social worker). Plaintiff is also suing Dr. Griffin, an orthopedist at Boscobel Hospital.

Plaintiff alleges that on December 18, 2015, Leffler, Hunt, and Gallinger woke him up. They told him he needed to be transported to a strip cage so that maintenance could change the nightlight. Plaintiff states that he complied, and Hunt and Gallinger applied hand and leg restraints and escorted plaintiff to the strip cage a few doors down from his. Gallinger told plaintiff to kneel down and then "all at once" Gallinger and Hunt applied a "great amount of pressure" to his wrists and hands. According to plaintiff, Gallinger jammed his thumb and fingers into the back plaintiff's hand while bending his wrist up as if he intended to break plaintiff's hand and wrist. Plaintiff states that the force applied by Hunt resulted in cuts and swelling around his right hand.

3

Jones, Brown, Snodgrass, and Allen responded. Plaintiff states that he was not resisting, but these officers "pile[d] up on [him] causing [his] body to slam up against the steel door." Plaintiff states that the wind was knocked out of him and that he began to have a panic/anxiety attack.

Once plaintiff was secured in the strip cell, Nurse Wood was called. The handcuffs remained on plaintiff, so he states that he could not properly display his injuries to her. Wood told security to give plaintiff an ice pack and ibuprofen, but she did not check his vital signs or offer bandages or ointment for his abrasions. Later (it is unclear from the allegations when), Dr. Griffin and Nurse Waterman sent plaintiff for x-rays to rule out broken bones to his left hand, but they did not order an MRI. Plaintiff states that he was sent to Dr. Riley, an off-site orthopedist. Plaintiff alleges that Riley told him that injuries such as his usually require surgery, but he wasn't going to order it at that time because the injury might heal on its own. Plaintiff states that neither Waterman nor Griffin have pursued surgery to address his injuries.

Plaintiff states that he was complaining about the pain and requested to go to the hospital (again, it is unclear when), but Leffler ignored him. Leffler also falsely accused plaintiff of making threats to kill staff and their children. Plaintiff was placed on back-of-the-cell "boxtrap" restriction for fifteen days (plaintiff does not explain what this restriction means) without a hearing. Although it is not entirely clear, it appears that Leffler accused plaintiff of making these threats during the December 18 incident. Plaintiff states that the video of the incident shows those involved goofing off and giggling and that it does not appear that they were under any threat.

4

On January 13, 2016, plaintiff states that he was written up again for making threats to harm Gallinger. Plaintiff states that Kartman had plaintiff pulled out of his cell so that Kartman could stand in front of plaintiff for nearly an hour. Plaintiff states that Kartman did this to provoke plaintiff, but plaintiff did not "take the bait." Again, plaintiff was placed on back-of-the-cell boxtrap. Plaintiff states that this was done to harass and provoke him.

On January 26, 2016, Cichanowicz heard both conduct reports and found plaintiff guilty of making threats, being disruptive, and disobeying orders. Plaintiff was sentenced to 120 days of disciplinary segregation, thirty days of room confinement, and fifteen days of boxtrap back-of-the-cell restriction. Plaintiff states that there were due process violations because the standard in disciplinary proceedings is so low that he can be found guilty on nothing more than an officer's written report.

Plaintiff states that shortly after his hearing, he received a visit from his sister, which was terminated early without notice. He states that his mother had requested an extended visit, but Dickman (his social worker) failed to fill out the proper form to allow for such a visit. He states that the visit was terminated early as a way of harassing and provoking him. Plaintiff states that if Gallinger and Hunt had not attacked him in December, then he would not have received the conduct reports and he would have been allowed a lengthier visit.

Plaintiff's complaint then skips to March 11, 2016. He states that while being transported to the orthopedist for his hand injury, Wigel, under Brown's supervision, strapped an electrical "weapon" to his calf even though he was already under full restraints. He believes the electrical devise is deadly and that Wigel is not qualified to

5

use it. Plaintiff alleges that it could have been triggered by accident, although plaintiff makes no allegation that it was actually triggered.

Finally, plaintiff alleges that he appealed his two conduct reports to Williams, but he failed to acknowledge plaintiff's arguments on appeal.

Analysis

*Excessive Force*

Where prison officials are accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). Several factors are relevant in making that determination, including the need for the application of the force, the amount of force applied, the threat an officer reasonably perceived, the effort made to temper the severity of the force used, and the extent of the injury that force caused to an inmate. *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) (citing *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 1999)).

Given that, at this stage, plaintiff's allegations are to be construed broadly and accepted as true, I will allow him to proceed on his claims that Gallinger, Hunt, Jones, Brown, Snodgrass, and Allen used excessive force against him on December 18, 2015. However, plaintiff may not proceed on his excessive force claims against Wigel or Brown based on their placement of an electrical "weapon" on plaintiff's calf. Plaintiff's allegations indicate that the "weapon" was never used, so there was no force applied upon which plaintiff can base a claim. Similarly, plaintiff has not stated a claim against

6

Kartman, who the plaintiff alleges stood in front of plaintiff for an hour in an attempt to provoke him. Merely standing in front of a person does not violate the Eighth Amendment.

*Deliberate Indifference to Serious Medical Needs*

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (*i.e.*, that the medical need be sufficiently serious) and a subjective element (*i.e.*, that the officials act with a sufficiently culpable state of mind). *Id.* With regard to the subjective element, medical malpractice is insufficient, as is a mere disagreement with a medical professional's medical judgment. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). "A plaintiff can show that the professional disregarded the need only if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, 'no minimally competent professional would have so responded under those circumstances.'" *Arnett*, 658 F.3d at 751 (quoting *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011)).

Plaintiff's allegations against Wood, Griffin, Waterman, and Riley fail to meet the high standard of a deliberate indifference claim. According to plaintiff, Nurse Wood examined him shortly after the December 18 incident and gave him an ice pack and some ibuprofen. Plaintiff complains that she did not check his vitals or provide him with bandages, but a disagreement with a provider's treatment is insufficient to state an Eighth Amendment claim. Plaintiff's complaint that Griffin and Waterman ordered an x-

7

ray but not an MRI fails for the same reason. Finally, plaintiff alleges that Riley, an orthopedist, decided to take a wait-and-see approach rather than ordering surgery immediately. Based on these allegations, it is clear Riley did not fail to exercise professional judgment; instead, he decided that it was better to try to let the hand heal on its own. Riley is permitted under the Constitution to exercise his judgment as to the best approach even if plaintiff disagrees.

*Due Process*

Plaintiff fails to state a due process claim against Cichanowicz, who plaintiff alleges was the hearing officer at the hearing on his two conduct reports. Plaintiff alleges that he was given 120 days in disciplinary segregation, thirty days room confinement, and fifteen days boxtrap back-of-the-cell restriction. The U.S. Supreme Court has held that placement of a prisoner in disciplinary segregation triggers the protections of the due process clause only when the prisoner is subjected to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Court of Appeal for the Seventh Circuit has clarified that when courts evaluate whether a prisoner has been subjected to "atypical and significant hardship" they are to look not only at the duration of the confinement but also the conditions of the confinement. *See Hardaway v. Meyerhoff,* 734 F.3d 740 (7th Cir. 2013).

Here, plaintiff is silent as to the conditions of his confinement, so I cannot determine whether the protections of the Due Process Clause were even triggered. However, even assuming those protections were available, plaintiff's conclusory allegation that the hearing violated the Due Process Clause is insufficient to state a

8

claim. Plaintiff alleges only that there was a hearing and that he was found guilty of the charges. While he states the standard in disciplinary hearing is low generally, he provides no factual content about his hearing in particular that would allow me to draw the reasonable inference that Cichanowicz is liable for the misconduct plaintiff alleges. Conclusions, with nothing more, are not entitled to the assumption of truth.

Plaintiff also fails to state claims against Leffler and Gallinger, who allegedly made false accusations that plaintiff threatened guards and their families. Plaintiff indicates that he received written conduct reports as a result of these allegations and that a hearing was held in connection with those conduct reports. The Court of Appeals for the Seventh Circuit has held that the procedural protections required under the Due Process Clause adequately protect prisoners from fraudulent charges. *See Wilson v. McBride*, 93 Fed.Appx. 994, 996 (7th Cir. 2004) (unpublished). Because plaintiff fails to state claim for a violation of the Due Process Clause, these claims also fail.

Plaintiff also fails to state a claim against Williams, to whom he appealed his conduct reports. Plaintiff alleges that Williams did not acknowledge his appeals. Williams may have violated prison procedures by not acknowledging plaintiff's appeals, but prison procedures themselves are not substantive liberty or property interests that are protected by the Due Process Clause, *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982), and a violation of state laws or regulations is not a basis for a federal rights suit, *see Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010). As such, plaintiff cannot state a claim against Williams based on his failure to acknowledge or respond to his appeal of the conduct reports.

9

Finally, plaintiff fails to state a claim against Dickman, whom he alleges did not fill out the necessary paperwork so that he could have an extended visit with his sister.[2] Even if Dickman intentionally failed to complete the paperwork for an extended visit, such conduct would not implicate the Due Process Clause because not every impairment of a liberty is sufficiently grievous to amount to a constitutional deprivation. *See Adams v. Aaron*, 421 F.Supp. 430, 431 (E.D. Ill. 1976). Plaintiff was not denied a visit with his sister entirely; rather, plaintiff's visit was limited to the standard one hour instead of an extended two and one-half hours. In addition, even if she failed to fill out the paperwork as a way of harassing plaintiff, such conduct, while perhaps frustrating or petty, is not so objectively serious that it rises to the level of an Eighth Amendment violation. *See Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir. 2004) (stating that the alleged deprivation must be sufficiently serious so that a "prison official's act or omission results in the denial of the minimal civilized measure of life's necessities").

**NOW, THEREFORE, IT IS ORDERED** that plaintiff may proceed on his excessive force claims against Gallinger, Hunt, Jones, Brown, Snodgrass, and Allen.

**IT IS ALSO ORDERED** that plaintiff's claims against Leffler, Wood, Waterman, Griffin, Cichanowicz, Kartman, Williams, Wigel, and Dickman are **DISMISSED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for extension of time to file amended complaint (Docket #16) is **GRANTED**.

**IT IS ALSO ORDERED** that plaintiff's motion to amend/correct (Docket #18) is **DENIED AS MOOT**.

---

[2] On April 18, 2016, plaintiff filed a motion to correct a misstatement in his claim against Dickman. The proposed correction has no impact on my analysis of this claim. Because I conclude that plaintiff fails to state a claim against Dickman, I will deny his motion to correct as moot.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Gallinger, Hunt, Jones, Brown, Snodgrass, and Allen.

**IT IS ALSO ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, Gallinger, Hunt, Jones, Brown, Snodgrass, and Allen shall file a responsive pleading to the complaint within sixty days of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if plaintiff is no longer incarcerated at one of those institutions, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered,

thus affecting the legal rights of the parties. Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

Dated at Milwaukee, Wisconsin, this 22nd day of April, 2016.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge